| | |
|---|---|
| DISTRICT COURT, PUEBLO COUNTY, COLORADO<br><br>Court Address:<br>501 N. Elizabeth<br>Pueblo, CO 81003 | DATE FILED: October 27, 2014 4:56 PM<br>FILING ID: 87EB4EF1A1657<br>CASE NUMBER: 2014CV30987 |
| Plaintiff:<br><br>**LEE BRYANT RUCKER**<br><br>vs.<br><br>Defendants:<br><br>**MINNEQUA MEDICENTER; SSC PUEBLO OPERATING COMPANY, LLC D/B/A MINNEQUA MEDICENTER; SSC PUEBLO BELMONT OPERATING COMPANY, LLC; SAVASENIORCARE, LLC; SAVASENIORCARE ADMINISTRATIVE SERVICES, LLC; AND SSC SAVASENIORCARE CONSULTING, LLC** | ▲   **COURT USE ONLY**   ▲ |
| Attorneys for Plaintiff:<br>SHANNON REED, #13805<br>RICHARD A. ORONA, #35299<br>Mullans, Piersel & Reed, P.C.<br>1311 N. Greenwood Street<br>Pueblo, CO 81003<br>Telephone: (719) 543-2040<br>Fax:         (719) 543-6538 FAX<br>Email:      reed@mprlegal.com<br>                orona@mprlegal.com | Case No.:<br><br>Division: |
| **COMPLAINT** ||

COMES NOW, Plaintiff Lee Rucker, by and through his attorneys Mullans, Piersel, & Reed, P.C. respectfully submits his Complaint and in support thereof, states the following:

### STATEMENT OF PARTIES AND JURISDICTION

1. All times relevant to the events described in this Complaint, Plaintiff Lee Rucker was and is a resident of the County of Pueblo, State of Colorado, is engaged in the civilian pursuits, and

1

presently resides at the Minnequa Medicenter located at 2701 California Street, Pueblo, Colorado.

2. Upon information and belief, Defendant Minnequa Medicenter is a short and long term health care facility located at 2701 California Street, Pueblo, Colorado, and is engaged in civilian pursuits.

3. Upon information and belief, Defendant SSC Pueblo Operating Company, LLC d/b/a Minnequa Medicenter is a Delaware limited liability company with its principal office at One Ravine Drive, Suite 1500, Atlanta, Georgia, and owns, operates, controls, and holds the license to operate Minnequa Medicenter.

4. Upon information and belief, Defendant SSC Pueblo Belmont Operating Company, LLC, is a Delaware limited liability company with its principal office at One Ravine Drive, Suite 1500, Atlanta, Georgia, and owns, operates, controls and holds the license to operate Minnequa Medicenter.

5. Upon information and belief Defendant SavaSeniorCare, LLC, is a Delaware limited liability company with its principal office at One Ravine Drive, Suite 1500, Atlanta, Georgia, and owns, operates, controls, and holds the license to operate Minnequa Medicenter.

6. Upon information and belief, Defendant SavaSeniorCare Consulting, LLC, is a Delaware limited liability company with its principal office at One Ravine Drive, Suite 1500, Atlanta, Georgia, and owns, operates, controls, and holds the license to operate Minnequa Medicenter.

7. Upon information and belief, Defendant SavaSeniorCare Administrative Services, LLC, is a Delaware limited liability company with its principal office at One Ravine Drive, Suite 1500, Atlanta, Georgia, and owns, operates, controls, and holds the license to operate Minnequa Medicenter.

8. Defendants collectively controlled the operation, planning, management, budget, and quality control of Minnequa Medicenter. Specifically, the Defendants, collectively or individually, were tasked with the creation and implementation of policies and procedures consistent and in full compliance with all state and federal laws for Minnequa Medicenter.

9. At all times relevant, upon information and belief, Defendants owned and operated, managed, and/or controlled Minnequa Medicenter, either directly or through a joint enterprise, partnership, and/or through the agency of each other and/or other diverse entities, subsidiaries, governing bodies, agents, servants, or employees.

10. Venue is proper in the Pueblo County District Court as the acts and omissions complained of herein occurred in Pueblo County, State of Colorado.

11. The Court has jurisdiction over the subject matter at issue.

## II. FACTUAL BACKGROUND

12. Plaintiff hereby incorporates each and every averment set forth herein as if each and every averment were set forth verbatim herein.

13. On September 9, 2014, Lee Rucker, DOB: 04/12/26, was a resident of Defendant Minnequa Medicenter where he continues to reside. Previously, Mr. Rucker served honorably in the United States Army during World War II.

14. Upon information and belief, since March 25, 2014, Keith Long had been a resident of Defendant Minnequa Medicenter.

15. Upon information and belief, on July 7, 2014, the Colorado Department of Health conducted a survey at Minnequa Medicenter and issued a report that details the Defendant's failure to properly supervise Mr. Long and ensure the safety of all residents and staff of Minnequa Medicenter. (See Exhibit A).

16. As a consequence of the July 7, 2014 survey, the Colorado Department of Health cited Defendants for failing to "ensure that the resident environment remains as free of accidental hazards as is possible; and each resident receives adequate supervision and assistance devices to prevent accident." (See Exhibit A, Colorado Department of Health Survey).

17. Specifically, under the Surveyor's Findings, the State of Colorado found the following:

    a. Mr. Long had significant cognitive impairment;

    b. Mr. Long was prescribed anti-anxiety medication for anxiety, anti-psychotic medication for increased behaviors and combativeness toward family and staff, and psychoactive medication to alleviate agitation, striking out, yelling out and pacing down the halls;

    c. Medication Regime Reviews were completed by the pharmacist on 3/27/14, 4/25/14, 5/28/14 and 6/13/14 - Each date was signed with initials, but no notations regarding the initiation of psychoactive medications were included for April, May or June 2014;

    d. 3/13/14 at 1:15 p.m. – Resident [Mr. Long] up in wheelchair, intrusive into other residents' rooms and space. Angry if taken away from somewhere he wants to be;

    e. 4/2/14 at 10 a.m. - Resident [Mr. Long] is intrusive into other residents' rooms and office space. Easily directed;

    f. 4/8/14 at 2:30 p.m. - Resident [Mr. Long] has been more aggressive and resistive to care today. Refused to let CNA give him a shower;

    g. 4/22/14 at 9:10 a.m. - Resident [Mr. Long] was taken to Parkview Emergency Room for psychiatric evaluation after the resident became engaged in an altercation with another resident. He sustained an abrasion to his right cheek are where the other resident hit him with his cane;

h.  5/6/2014 at 2:08 p.m. - Resident was one-on-one staffing and was verbally aggressive;

i.  From 6/26/14 to 7/1/14 no care plans related to the resident's [Mr. Long's] physical verbal behavioral needs were included in the resident's [Mr. Long's] medical records. Likewise, no care plans related to the administration of Seroquel or Ativan were located in the resident's [Mr. Long's] medical record; and

j.  On 7/1/14 at 10:30 a.m. the three care plans were provided; these plans had not been available in the resident's [Mr. Long's] medical record of any care plan book. These plans addressed wandering, verbal abuse, physical abuse, socially inappropriate behavior, and restiveness to care;

Contained in the Interviews section, the State provided the following statements:

a.  The Director of Nursing stated the following:

   1)  "we did care plans, but I don't know where they are"; and

   2)  the care plans had not been shared with staff caring for the resident [Mr. Long] and had not been made available in the resident's [Mr. Long's] medical record. The resident [Mr. Long] was on one-on-one staffing for his verbal and physical aggressiveness. He [Mr. Long] had been moved down to a quiet wing where he was only one of two residents in an attempt to keep in a calm environment.

b.  Nurses Aide (CNA #1) stated the following:

   1)  She said she was always one-on-one with the resident [Mr. Long] for a month unless he was sleeping;

   2)  "He [Mr. Long] is aggressive when touched, he's resistive to care and he yells obscenities al the time. He can strike very quickly. He's an unpredictable person because of his head injury";

   3)  She didn't know of any written care plan or instructions on how to care for this resident [Mr. Long], saying "We just learn how to handle him by handling him." She said she didn't get any instructions via telephone to tell her how to deal with the resident [Mr. Long]. She continued, "Sometimes I can't take it anymore and I have to call for someone else to come and watch him [Mr. Long] for awhile – I don't know how to handle him most of the time. I do the best I can."

c.  The Assistant Director of Nursing stated the following:

   1)  The resident [Mr. Long] was kept on one-to-one staffing for the protection of other staff and residents; and

   2)  It was very difficult for staff to handle the resident [Mr. Long].

d.  Nursing Home Administrator stated the following:

4

       1)      Not surprised that the care plans had not been appropriately communicated with staff. "We have a real mess with documentation; everything has been in such a whirlwind. The behavior care plans should have been available and communicated to staff. We're keeping him [Mr. Long] one-to-one supervision because we are doing everything we can for the protection of everyone involved." (Exhibit A)

18. On September 9, 2014, Mr. Long entered Mr. Rucker's room at the Minnequa Medicenter without permission. Upon entering his room and finding Mr. Long in his room, Mr. Rucker, acting reasonably within his rights, instructed Mr. Long to leave Mr. Rucker's room.

19. Instead of leaving the room, and without provocation, Mr. Long brutally assaulted Mr. Rucker with his fists and used Mr. Rucker's cane to repeatedly strike Mr. Rucker throughout his body, including but not limited to his head, face, and legs.

20. As a direct and proximate result of Mr. Long's assault on him, Mr. Rucker sustained serious and permanent injures including, but not limited to: 1) a fracture of the anterior left maxillary wall of his eye socket; 2) a probably fracture of his leg; 3) subcutaneous contusions of his face and cheeks; 4) contusions and lacerations of his scalp, nose and face; and 5) discoloration of his head.

21. Mr. Rucker was unable to adequately protect himself because he was in a motorized wheel chair at the time of the brutal assault.

22. At the time of the September 9, 2014 brutal assault of Mr. Rucker, the Defendants did not have Mr. Long under one-to-one supervision.

23. At the time of the September 9, 2014 brutal assault, the Defendants knew Mr. Long was a danger to both residents and staff of Minnequa Medicenter.

24. At no time did any member of the Minnequa Medicenter prevent or stop the September 9, 2014, brutal assault that was inflicted upon Mr. Rucker.

25. In response to the September 9, 2014 brutal assault on Mr. Rucker, the Pueblo Police Department dispatched Officer Tim Torres to investigate the brutal assault on Mr. Rucker. Officer Torres provided sworn testimony, via affidavit, that Minnequa Medicenter's Head Nurse Lynette Miller-Taylor stated the following:

    a.    Mr. Rucker had been assaulted with his own cane by Keith Long;

    b.    The nursing staff noticed Mr. Rucker in his wheel chair going down the hallway covered in blood;

    c.    Keith Long was in the nursing home because he has a traumatic brain injury and that he may not know the difference between right and wrong due to the traumatic brain injury;

        d.        Prior to the September 9, 2014 brutal assault of Mr. Rucker, Mr. Long assaulted other residents and staff members at Minnequa Medicenter.

        e.        Mr. Rucker is currently 88 years old has trouble walking and uses a wheelchair. (See Exhibit B, Affidavit of Officer Tim Torres).

As a result of the September 9, 2014 brutal assault on Mr. Rucker, Mr. Long has been formally charged with a Class 4 Felony - Second Degree Assault by the District Attorney of the Tenth Judicial District of the State of Colorado.

26. After the September 9, 2014 brutal assault, Mr. Rucker was transported to Parkview Medical Center via ambulance and received treatment for the injuries he sustained from the brutal assault.

27. At all times relevant, the Defendants assumed responsibility for ensuring that Mr. Rucker receive appropriate and adequate health care.

28. The Defendants failed to reasonably follow-up with adequate medical care for Mr. Rucker from a medical doctor for his injuries sustained in the September 9, 2014 brutal assault within a reasonable time after his release from Parkview Medical Center.

29. Mr. Rucker continues to suffer from injuries sustained from the September 9, 2014 brutal assault and Defendants continue to not provide adequate health care to address Mr. Rucker's injuries.

30. Federal and state laws and regulations require that Defendants provide, among other duties, a safe and secure environment for Mr. Rucker to reside.

31. Federal and state laws and regulations require that Defendants inform residents, including, Mr. Rucker, of his medical condition and proposed treatment.

32. Federal and state laws and regulations require that Defendants provide, among other duties, adequate and appropriate health care consistent with established and recognized practice standards within the medical community.

33. Federal and state laws and regulations require that Defendants ensure that Mr. Rucker is treated courteously, fairly, and with the fullest measure of dignity.

34. Federal and state laws and regulations require that Defendants provide a safe and secure environment for Mr. Rucker to reside.

35. Federal and state laws and regulations require that Defendants ensure that Mr. Rucker be free from mental and physical abuse.

36. Under state and federal law, Defendants were required to create and implement policies and procedures to ensure that all residents and staff, specifically Mr. Rucker, were in a safe and secure environment.

37. The Defendants hold themselves out to the public at large, including but not limited to Mr. Rucker, as being capable and willing to provide the necessary care and safety needs of residents such as Mr. Rucker.

38. As a consequence of Defendants' actions or inactions, Mr. Rucker has suffered and continues to suffer damages including economic loss, non-economic loss, and permanent personal injury. Damages include, but are not limited to, severe emotional distress, grief, extreme pain and suffering, loss of enjoyment of life, scarring and disfigurement, in amounts to be determined by a jury.

### III.   FIRST COUNT: NEGLIGENCE

39. Plaintiff hereby incorporates each and every averment set forth herein as if each and every averment were set forth verbatim herein.

40. Defendants owed to Mr. Rucker a duty of care dictated by state and federal law, as well as the reasonable standard of care of a nursing home.

41. Defendants breached this duty of care by failing to adequately provide Mr. Rucker with a safe and secure environment. Specifically, the Defendants failed to protect and/or take reasonable steps to protect Mr. Rucker from Mr. Long, another resident known by them to be dangerous, who had previously assaulted other residents and staff members.

42. Defendants breached their duty of care by failing to ensure that Mr. Rucker be free from mental and physical abuse

43. Defendants breached their duty by failing to inform Mr. Rucker of his medical condition and proposed treatment associated with the injuries he sustained from the September 9, 2014 brutal assault.

44. Defendants breached their duty of care by failing to provide Mr. Rucker with adequate and appropriate health care for the injuries he sustained from the September 9, 2014, brutal assault.

45. Defendants breached their duty of care by failing to ensure Mr. Rucker was treated courteously, fairly, and with the fullest measure of dignity.

46. The Defendants named herein are jointly, severally, and vicariously liable for the negligence of the Minnequa Medicenter's agents, employees, and nurses.

47. As a consequence of Defendant's breaches of the duties owed to him, Mr. Rucker has suffered and continues to suffer damages including economic loss, non-economic loss, and permanent personal injury. Damages include, but are not limited to, severe emotional distress, grief, extreme pain and suffering, loss of enjoyment of life, scarring and disfigurement, in amounts to be determined by a jury.

## IV.  THIRD COUNT: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

48. Plaintiff hereby incorporates each and every averment set forth herein as if each and every averment were set forth verbatim herein.

49. At all times relevant, Defendants recklessly failed, after being put on actual notice on several occasions of the propensity and history of Mr. Long to be violent with both residents and staff, to provide Mr. Rucker with a safe and secure environment at Minnequa Medicenter.

50. Defendants recklessly disregarded their own policies and procedures to provide Mr. Long with one-on-one care so as to prevent Mr. Long from brutally assaulting Mr. Rucker.

51. Defendants recklessly failed to ensure that Mr. Rucker was free from mental and physical abuse.

52. Defendants recklessly failed to inform Mr. Rucker of his medical condition and proposed treatment associated with the injuries he sustained from the September 9, 2014 brutal assault.

53. Defendants recklessly failed to provide Mr. Rucker with adequate and appropriate health care for the injuries he sustained from the September 9, 2014, brutal assault.

54. Defendants recklessly failed to ensure Mr. Rucker was treated courteously, fairly, and with the fullest measure of dignity.

55. Defendants recklessly failed to inform Mr. Rucker of his medical condition and proposed treatment associated with the injuries he sustained from the September 9, 2014 brutal assault.

56. As a consequence of Defendant's breaches of the duties owed to him, Mr. Rucker has suffered and continues to suffer damages including economic loss, non-economic loss, and permanent personal injury. Damages include, but are not limited to, severe emotional distress, grief, extreme pain and suffering, loss of enjoyment of life, scarring and disfigurement, in amounts to be determined by a jury.

## V.  VIOLATION OF THE COLORADO CONSUMER PROTECTION ACT

57. Plaintiff hereby incorporates each and every averment set forth herein as if each and every averment were set forth verbatim herein.

58. Defendants engaged in unfair and deceptive trades practice by advertising to the general public through a campaign which includes print media, handouts, brochures, and internet marketing. Defendants deceptively advertise that they would provide "our residents with services designated to achieve the best possible health, level of function, and quality of life."

59. Through this campaign, Defendants engaged in unfair and deceptive trades practice by advertising to the general public that they would provide Mr. Rucker and its residents:

    a.  a safe and secure environment;

    b.  an environment that is free from mental and physical abuse;

    c.  information regarding their medical condition and proposed treatment;

    d.  adequate and appropriate health care; and

    e.  an environment in which they were treated courteously, fairly, and with the fullest measure of dignity.

60. Defendants' unfair and deceptive trades practices was advertised to the general public as a whole and had significant impact on the general public, specifically Mr. Rucker's decision regarding his choice of a nursing home. In addition, Defendants' unfair and deceptive trades practices significantly impacted the market for long-term care services locally and nationally.

61. These unfair and deceptive trade practices constitute a fraud on the general public and on Mr. Rucker, as well as fellow residents.

62. The Defendants' unfair and deceptive trades practice has caused the general public, Mr. Rucker and other residents to suffer damages and injuries. Specifically, the Defendants' unfair and deceptive trades practice has caused Mr. Rucker economic loss, non-economic loss, and permanent personal injury. Damages include, but are not limited to, severe emotional distress, grief, extreme pain and suffering, loss of enjoyment of life, scarring and disfigurement, in amounts to be determined by a jury.

## VI   NEGLIGENCE *PER SE*

63. Plaintiff hereby incorporates each and every averment set forth herein as if each and every averment were set forth verbatim herein.

64. Defendants owed to Plaintiff a duty of care dictated by state and federal law, as well as the standard of care of a nursing home.

65. The negligence *per se* of Defendants include, but is not limited to, violations of the following:

    a.  C.R.S. §25-1-120(1)(f) – The right to be adequately informed of his medical condition and proposed treatment, unless otherwise indicated by his physician, and to participate in the planning of all medical treatment, including the right to refuse medication and treatment, unless otherwise indicated by his physician, and to know the consequences of such actions;

    b.    C.R.S. §25-1-120(1)(g) – The right to receive adequate and appropriate health care consistent with established and recognized practice standards within the community and with skilled and intermediate nursing care facility rules and regulations as promulgated by the department;

    c.    C.R.S. §25-1-120(1)(i) – The right to be treated courteously, fairly, and with the fullest measure of dignity and to receive a written statement of the services provided by the facility, including those required to be offered on an as-needed basis; and

    d.    C.R.S. §25-1-120(1)(j) – The right to be free from mental and physical abuse and from physical and chemical restraints, except those restraints initiate through the judgment of the professional staff for a specific and limited period of time or on the written authorization of a physician.

66. In addition to the injuries suffered by Mr. Rucker as a result of Defendants' breaches of their statutory duties, as referenced above, the Colorado Department of Health previously cited Defendants for failing to "ensure that the resident environment remains as free of accidental hazards as is possible; and each resident receives adequate supervision and assistance devices to prevent accident." This citation arises out of the danger Mr. Long presented to Mr. Rucker, other residents, and staff at Minnequa Medicenter.

67. The Defendants named herein are jointly, severally, and vicariously liable for the negligence *per se* of the Minnequa Medicenter's agents, employees, and nurses which negligence is imparted to them by way of the doctrine of *respondeat superior* and the general laws of agency.

68. As a consequence of Defendant's breaches of the duties owed to him, Mr. Rucker has suffered and continues to suffer damages including economic loss, non-economic loss, and permanent personal injury. Damages include, but are not limited to, severe emotional distress, grief, extreme pain and suffering, loss of enjoyment of life, scarring and disfigurement, in amounts to be determined by a jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that this Court enter judgment in favor and against the Defendants in an amount to be determined by a jury at trial, and for the following relief and damages:

    a.    Economic damages;
    b.    Non-economic damages;
    c.    Damages under the Colorado Consumer Protection Act;
    d.    Reasonable attorneys' fee award;
    e.    Court costs and witness fees;
    f.    Pre-judgment and post judgment interest on any award of damages to the extent permitted by law;
    g.    Treble damages and actual damages;
    h.    Such other and further relief as the Court may deem proper.

Plaintiff hereby demands an expedited trial by jury, pursuant to C.R.S. § 13-1-129(2) as to all claims triable.

This matter is exempt from C.R.C.P. 16.1 as the damages claimed herein exceed $100,000.

Respectfully submitted this 27th day of October, 2014.

MULLANS, PIERSEL & REED, P.C.

By: _____
Shannon Reed, #13805
Richard A. Orona, #35299
Attorneys for Plaintiff

**Plaintiff's Address:**
**2701 California Street**
**Pueblo, CO 81004**